UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| OLEN MIDKIFF and LINDA MIDKIFF, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No. 4:08-CV-01219 DJS |
| | ) | **JURY TRIAL DEMANDED** |
| 3M COMPANY, AS SUCCESSOR BY | ) | |
| MERGER TO MINNESOTA MINING & | ) | |
| MANUFACTURING COMPANY AND/OR | ) | |
| ITS PREDECESSORS/SUCCESSORS IN | ) | |
| INTEREST | ) | |
| and | ) | |
| MINE SAFETY APPLIANCES, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT MINE SAFETY APPLIANCES COMPANY'S MOTION TO RECONSIDER THE COURT'S ENTRY OF PROTECTIVE ORDER CONCERNING DISCOVERY OF 3M DOCUMENTS AND INFORMATION**

COMES NOW Defendant Mine Safety Appliances Company (hereinafter "MSA") and in support of its Emergency Motion to Reconsider the Court's Entry of Protective Order Concerning Discovery of 3M Documents and Information states as follows:

**I.   BACKGROUND**

This case is one of four companion cases currently pending in the Eastern District of Missouri.[1] In each case, Plaintiffs allege the use of an MSA Dustfoe respirator "in the early part of his work career at ISP minerals." Plaintiffs also allege the use of 3M 8710 and 3M 8715 respirators throughout the duration of their employment. Plaintiffs further allege that said

---

[1] The companion cases are *Robert Savage v. 3M, et al.*, pending in Judge Shaw's court; *Carl Scaggs v. 3M, et al.*, pending in Judge Webber's Court and *Robert Firebaugh v. 3M, et al.*, pending in Judge Webber's Court.

1

respirators failed to perform properly, thereby causing or contributing to cause Plaintiffs to develop silica-induced airway obstruction.

Within the past 30 days and prior to the deposition of MSA's corporate representative, counsel for MSA specifically asked both Larry King and Dan Adams, counsel for 3M, in separate conversations, about the use of protective orders in this case relating to 3M and MSA documents. Both Mr. King and Mr. Adams indicated that they knew nothing of 3M's intentions with respect to protective orders governing the disclosure or use of 3M and MSA documents (*See* Affidavit of W. Jeffrey Muskopf, attached hereto as Exhibit A). Counsel for 3M attended and was present through the entirety of the deposition of MSA's corporate representative taken on May 7 and May 12, 2010. Counsel for 3M viewed MSA's documents and placed objections on the record when the testimony impacted 3M. Counsel for 3M had access to all exhibits marked during the deposition of MSA's corporate representative and was provided copies of these exhibits.

On May 13, 2010, one day after the completion of the deposition of MSA's corporate representative, and prior to the scheduled deposition of 3M's corporate representative, Defendant 3M filed its incorrectly named Motion for Entry of Stipulated Protective Order ("3M's Motion") and proposed Protective Order Concerning Discovery of 3M Documents and Information ("Protective Order"). Docket Doc. #55 and 55-1. Though labeled "Stipulated Protective Order," the title of 3M's Motion is misleading as not only did MSA not agree to the terms of the Protective Order, MSA was unaware of the Protective Order until MSA received notice of filing of 3M's Motion. (*See* Affidavit of W. Jeffrey Muskopf, attached hereto as Exhibit A; Affidavit of Karen K. Maston, attached hereto as Exhibit B). On May 14, 2010, before MSA was able to file a memorandum in opposition to 3M's Motion, this Court entered its Order granting 3M's

2

Motion. Docket Doc. #56. After the Protective Order was granted, MSA filed its Emergency Motion to Reconsider (Docket Doc. #58) and Plaintiffs filed their Motion to Reconsider. Docket Doc. #57.

The Protective Order states the 3M documents containing "confidential or proprietary information" shall be protected and that any information contained in those documents will only be shown, disseminated or disclosed to certain qualified persons. Docket Doc. #55-1, ¶¶ 1-3. MSA, MSA's attorneys and MSA's experts are not included as qualified persons. *Id.* The Protective Order further specifically excludes disclosure of the protected documents and information to MSA and MSA's experts under any circumstance. *Id.* at ¶4. The deposition of 3M's corporate representative is currently scheduled for Friday, May 21, 2010. Under the terms of the Protective Order, MSA would be excluded from the deposition, whereas counsel for 3M attended the deposition of MSA's corporate representative and protected 3M's interests by placing objections on the record. Furthermore, under the terms of the Protective Order, it is conceivable that MSA and MSA's counsel may be required to leave the courtroom while the "protected information" is discussed at trial or in any other proceeding in this case (Docket Doc. #55-1, ¶¶ 13-14).

## II. F.R.C.P. 26(c) and LOCAL RULE 3.04(a)

As an initial matter, MSA notes that 3M's Motion does not meet the requirements of either F.R.C.P. 26(c) or Eastern District of Missouri Local Rule 37-3.04(a) ("Local Rule 3.04(a)"). *See* Docket Doc. #55. Federal Rule of Civil Procedure 26(c) requires that a motion for protective order "include a certification that the movant has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action." Similarly, Local Rule 3.04(a) states that the Court will not consider any motion

3

relating to discovery unless it contains a statement that the movant's counsel has conferred in good faith with opposing counsel regarding the discovery dispute.

The clear purpose of 3M's Motion is to prevent MSA from obtaining the information which 3M seeks to hide, and therefore MSA is an opposing party affected by 3M's Motion. Counsel for 3M did not discuss with MSA or provide copies of 3M's Motion or the Protective Order before they were filed, even though MSA had specifically asked counsel for 3M about potential protective orders. 3M's counsel did not confer or even attempt to confer with MSA's counsel regarding 3M's Motion prior to filing, and therefore 3M's Motion does not contain the certificate of conference required by F.R.C.P. 26(c) and Local Rule 3.04(a). As a result, the Court should not have considered 3M's Motion, and 3M's Motion should be stricken and the Order granting 3M's Motion should be set aside.

Only after MSA filed its Emergency Motion to Reconsider (Docket Doc. #57) did 3M offer a separate proposed protective order to MSA. While 3M's proposed protective order allows counsel for MSA to view the protected information, it does not cure the problems discussed herein. Furthermore, it is completely unworkable to have two separate protective orders covering the same documents in the same case. Therefore, 3M's proposed protective order is not acceptable to MSA.

### III.  FAILURE TO SHOW GOOD CAUSE

A district court may enter a protective order *only* upon a showing of good cause. F.R.C.P 26(c); *Jepson, Inc. v. Makita Electric*, 30 F.3d 854, 858 (7th Cir. 1994) (emphasis added). Even where the parties agree to a protective order, good cause must be shown. *Id.* The burden is on the movant to show the necessity of a protective order "which contemplates a particular and

specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *General Dynamics Corporation v. Selb Manufacturing*, 481 F.2d 1204, 1212 (8th Cir. 1973).

3M's Motion fails to show any cause, much less good cause, for the necessity of the Protective Order. 3M's Motion simply states that documents designated by 3M as containing "confidential or proprietary information" shall be protected. This is a conclusory statement wholly devoid of any factual support whatsoever. 3M provides no indication of what information is confidential or proprietary or why such information should be protected. As 3M's Motion wholly fails to show any cause for the necessity of a protective order, the Protective Order should not have been entered, and should be set aside.

### IV. THE "PROTECTED INFORMATION" IS NOT ENTITLED TO HEIGHTENED TRADE SECRET PROTECTION

Though 3M's Motion fails to show cause for the necessity of the Protective Order or give any indication of what documents are protected, presumably 3M desires a protective order based on trade secrets. In order for a protective order to withstand scrutiny, it must be issued to protect something of competitive value. In this case, the 8710 model at issue is not manufactured or sold by 3M in this country. It has lacked the required NIOSH certification since 1998. It is simply not state of the art and MSA would not want to copy nearly 40 year old technology when it has its own state of art NIOSH approved respirators. Furthermore, obsolete information cannot serve as the basis for a current trade secret claim. *Fox Sports Net North v. Minnesota Twins Partnership*, 319 F.3d 329, 336 (8th Cir. 2003). *See also Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 958 (D. Minn. 1999). The proper analysis would be for the court to review the alleged technology sought to be protected and make a determination of its commercial viability before entering an order that denies a litigant its due process rights. For example, courts have found protective orders inappropriate where a product that had not been sold for seven years was

5

obsolete and not entitled to current trade secret protection. *MicroStrategy Inc. v. Business Objects, S.A.*, 661 F. Supp. 2d 548 (E.D. Va. 2009). The model 8710 is not sold in this country and has not been sold for 12 years.

The fact that the 8710 was once a commercial product does not automatically shield the documents from discovery under trade secret protection. Indeed, if information is sufficiently relevant, the court may permit discovery of even the most valuable commercial information. *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288 (D.Del. 1985) (ordering the disclosure of the Coca-Cola formula, "one of the best kept trade secrets in the world." *Id.* at 289). "Unless the defendant may be made to answer, the plaintiff is deprived of its right to learn whether the defendant has done it a wrong." *Id.*, quoting *Grasselli Chemical Corp. v. National Aniline & Chem. Co.* 288 Fed. 379, 381 (S.D.N.Y. 1920) (Justice Learned Hand).

Because the 8710 is a defunct product, 3M cannot show that it is harmed by giving a party to the lawsuit and its counsel and experts access to the documents and testimony about those documents. 3M has failed to and cannot show that MSA would gain a competitive advantage from participating in depositions of a product it no longer sells or makes. The purpose of a trade secret statute is to prevent someone for profiting from another's current trade secret thus acquiring a free competitive advantage. *Omnitech Int'l Inc. v. Clorox Co.*, 11 F.3d 1316, 1325 (5th Cir. 1994). There simply no competitive advantage to be gained from a product that is no longer sold or manufactured in the United States and does not meet existing, mandatory safety standards. The trade secret must afford the owner a competitive advantage by having value to the owner and potential competitors. See *Daimler-Chrysler Services North America, LLC v. Summit Nat., Inc.*, 289 Fed.3d 916, 922 (6th Cir. 2008) (finding software that was "antiquated" did not yield a competitive advantage and was not entitled to trade secret protection. *Id.*) Simply

said, information regarding the 8710 has no commercial value to the existing respirator industry nor to 3M's competitors.

## V.  THE PROTECTIVE ORDER VIOLATES MSA'S DUE PROCESS RIGHTS

### a. The Protective Order is Overbroad and Unilateral

Not only was the Protective Order obtained without MSA's knowledge, approval or opportunity to be heard, it allows 3M to conceal and withhold documents from MSA without any check and balance. The Protective Order permits 3M to solely and unilaterally designate discovery product as confidential and provides that materials so designated may only be disclosed or disseminated to a limited number of persons, including plaintiff's counsel and counsel's employees and experts *but not MSA's counsel, employees and experts*. Docket Doc. #55-1, ¶3. Indeed, the order directly prohibits the distribution of "confidential" material to 3M's competitors. Docket Doc. #55-1, ¶4. Once 3M decides to label a document as confidential, MSA's attorneys are simply not permitted to see it, regardless of the relevance and importance of the document to MSA's defense, or even to challenge the designation of trade secret or confidential. Although the order makes no provision for MSA to ever have access to any 3M information designated as confidential, the Protective Order nevertheless is made binding on all parties and their successors, assigns, independent contractors and others, including MSA, who are not signatories. Docket Doc. #55-1, ¶ 17.

As currently written, the Protective Order raises serious due process concerns. 3M chooses which documents to designate as "confidential." Not having seen the documents, MSA is no position to make an effective challenge to the designation. (Indeed, one of the most striking aspects of the Protective Order is the absence of a provision for even *Plaintiff* to challenge the designation). 3M is simply left free to select the documents that MSA is forbidden from seeing.

7

This power extends to all documents so designated regardless of their importance to MSA's defense. This extraordinary denial of discovery rights deprives MSA of due process. *See McClelland v. Andrus*, 606 F.2d 1278 (D.C. Cir. 1979) (denial of discovery can rise to the level of due process violation); *Western Elec. Co., Inc. v. Stern*, 544 F.2d 1196 (3d Cir. 1976)(due process violation where information related to claims of a particular persons).

This total deprivation of one party of the fruits of discovery is not supported by the law. Parties are entitled to obtain "any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The Supreme Court has held that the discovery rules do not differentiate between private and non-private matters. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984). Hence, no absolute privilege from the disclosure of competitively sensitive information exists. *See Federal Open Market Committee v. Merill*, 443 U.S. 340, 362 (1979).

### b. The Protective Order Denies MSA its Right to a Defense at Trial and Is Not Supported by the Record

The Protective Order prohibits the dissemination of discovery marked "confidential" to the attorney's clients. Docket Doc. #55-1, ¶9. Hence, even if MSA's counsel somehow obtained equal discovery rights and received the "confidential" documents, it could not provide them to knowledgeable persons within MSA for review and analysis. The inability to discuss documents which are likely germane to its defense harms MSA's ability to properly prepare and defend its case.

An order limiting dissemination to attorneys is an exceptional remedy that must be specially justified by the record. In *St. Louis Univ. v. Meyer*, 2008 WL 1732926 (E.D. Mo. 2008) the court refused to enter a discovery order that contained a special "attorneys eyes only" designation where the movant could not show that disclosure to opposing counsel's client would result in serious and specific harm. The moving party must demonstrate that "disclosure will

work a clearly defined and very serious injury." *Id.*, citing *Uniroyal Chem. Corp. v. Syngenta Crop Prot.*, 224 F.R.D. 53, 56 (D.Conn. 2004). 3M cannot make that showing because the information it seeks to protect is not confidential or a commercially viable trade secret, as noted above.

Moreover the request for an "attorney's eyes only" designation must be balanced against the other party's need to confer with the client. The request is denied where "plaintiff's inability to review documents which are the subject of defendant's requested protective order would hamper or inhibit the ability of plaintiff and his attorneys to present plaintiff's case." *Skillington v. Activant Solutions Inc.*, 2009 WL 3852804 (E.D. Mo. 2009). Since the order was submitted as a stipulation of presumably all parties, the court had no factual record before it that would allow it to determine whether these procedural safeguards have been satisfied in this case.

> Discovery, trial preparation, and trial are made more difficult and expensive if an attorney cannot make complete disclosure of the facts to the litigant. Further, courts cannot ignore the fact that ninety-eight percent of cases are not tried, but are resolved in mediation and other settlement methods. It is difficult, and perhaps impossible, for an attorney to counsel a client to compromise or even abandon a case on the basis of information kept secret from the client. A litigant who is not in possession of all relevant facts, furthermore, is in a poor position to assess its obligation to evaluate its ongoing obligation to maintain only arguably meritorious actions at every stage of the case. Although the imposition of these and other handicaps upon a litigant is justifiable in some circumstances, such action by the court must be supported by a showing that disclosure will work a clearly defined and serious injury to the party seeking extraordinary confidential treatment."

*Arvco Container Corp. v. Weyhaeuser Co.*, 2009 WL 311125 (W.D. Mich. 2009).

3M should not be allowed to hide behind empty assertions of proprietary or trade secret protections for obsolete technology in order to prevent a party from seeing relevant liability documents that directly impact its ability to defend its case.

## VI. MSA'S COMPLIANCE WITH LOCAL RULE 3.04(a)

Prior to filing, counsel for MSA personally conferred with counsel for 3M by telephone on May 18, 2010 about the issues raised in this Memorandum in Support of MSA's Emergency Motion to Reconsider. *See* Affidavit of W. Jeffrey Muskopf, attached hereto as Exhibit A.

## VII. CONCLUSION

MSA respectfully requests that the Court reconsider its Order granting the Protective Order for the reasons discussed herein, including but not limited to: (1) 3M's Motion does not comply with the requirements F.R.C.P. 26(c) and Local Rule 3.04(a); (2) 3M's Motion fails to show good cause for the Protective Order; (3) the information which 3M seeks to protect is not entitled to heightened trade secret protection; and (4) the Protective Order violates MSA's due process rights. MSA further requests that the Court strike 3M's Motion and set aside its May 14, 2010 Order granting 3M's Motion. MSA further requests all such other and further relief to which it may be entitled.

Respectfully submitted,

/s/ W. Jeffrey Muskopf
W. Jeffrey Muskopf - #71431
Michael J. Smith - #57972
Sarah J. Hugg # 499126
LASHLY & BAER, P.C.
714 Locust Street
St. Louis, Missouri 63101
Telephone: (314) 621-2939
Facsimile: (314) 621-6844
jmuskopf@lashlybaer.com
msmith@lashlybaer.com
shugg@lashlybaer.com

ATTORNEYS FOR DEFENDANT MINE
SAFETY APPLIANCES COMPANY

**PROOF OF SERVICE**

  I hereby certify that on May 18, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following parties:

- Zane T. Cagle – zane@pagecagle.com
- John J. Kurowski - jkurowski@cateskurowski.com
- Lawrence R. King – lking@larsonking.com
- Candice Kusmer – ckusmer@kbslf.com
- Michael B. Martin – mbmartin@mmmllp.com
- W. Jeffrey Muskopf – jmuskopf@lashlybaer.com
- Sarah J. Hugg – shugg@lashlybaer.com
- Bernadette Weaver-Catalana – bcatalana@osbornreed.com

I have mailed a copy to the following parties:

  Daniel C. Adams
  Larson King, LLP
  30 E. Seventh Street
  2800 Wells Fargo Place
  St. Paul, MN 55101

                /s/ W. Jeffrey Muskopf