UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

OLEN MIDKIFF and )
LINDA MIDKIFF, )
)
       Plaintiffs, )
)
       vs. )     Case No. 4:08-CV-01219 DJS
)
3M COMPANY, AS SUCCESSOR BY )
MERGER TO MINNESOTA MINING )
& MANUFACTURING COMPANY )
AND/OR ITS PREDECESSORS/ )
SUCCESSORS IN INTEREST )
MINE SAFETY APPLIANCES )
)
       Defendants. )     JURY TRIAL DEMANDED

**REPLY BRIEF TO MSA'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

1.     The Defendant alleges that Plaintiffs have not pled negligence *per se.* Plaintiffs have, in fact, pled negligence *per se. See,* Plaintiffs Original Complaint, Doc. # 1 (Count VI ¶ 61 (h) (i)).

2.     While MSA makes a variety of arguments suggesting it did not have duty to recall the 21A or 21B versions of the Dustfoe 66, it is important to note that Plaintiff is <u>not</u> making an argument for summary judgment based upon recall. Plaintiff's motion is narrowly tailored and asks this Court to find that, at least, from January 19, 1965 to October 14, 1970, MSA did not comply with CFR Part 14 (1965) ("21B") because it is undisputed that during this time period MSA did not even seek 21B approval. If MSA did not seek 21B approval, it cannot be said that MSA was in compliance with 21B at least, from January 19, 1965 to October 14, 1970.

3.      MSA suggests that once 21B was adopted, its 21A certification never expired and that it was permissible to continue selling the 21A version.  To carry the Defendant's argument to its logical conclusion, this would mean that all MSA respirators approved under schedule 21A could be sold for time immemorial.

4.      The primary authority for MSA's position is found in MSA Exhibit 2, which reflects an extension of approval for the Dustfoe 66 (approval number 2166) on February 26, 1971. The BM 2166 approval is the assigned Bureau of Mine's approval number for the Schedule 21A approved Dustfoe.  However, this exhibit does not reflect that MSA received an extension of approval under schedule 21A. In fact, this extension related to use of the 21A approved mask with a 21B approved filter (BM 21B-113). This evidence does not illustrate that the Bureau of Mines continued to approve the 21A under the expired 21A schedule.  21B had already been adopted. The evidence illustrates that the Bureau of Mines extended approval of a Dustfoe 21A respirator frame with a 21B respirator filter. Consequently, MSA Exhibit 2 does not reflect an extension under 21A. Exhibit 2 is a separate and independent approval under schedule 21B. Evidence that MSA began intermixing 21B and 21A approved components of its respirators does not mean that the Bureau of Mines continued to approve 21A masks after adoption of 21B.   It means that the Bureau of Mines was extending 21B approval to a 21A/21B  hybrid mask containing components of both.

4.      The inescapable conclusion is that Schedule 21A was superseded on January 19, 1965.  When MSA failed to obtain certification from January 19, 1965 to October 14, 1970, it was in a *per se* violation of the regulation.  To argue otherwise would result in a twisted and illogical application of these regulations. If 21B did not immediately

2

supersede 21A, then under MSA's argument, it could continue selling a 21A version of the mask because no regulation has ever specifically superseded this approval.  The argument would mean that in the 1970's (or perhaps even through 1995), it was permissible to sell a 21A approved respirator, despite the fact that 21B had been in effect for over five years.

5.      Such duality would create nothing but confusion in the market. If there were, in fact, two approvals competing simultaneously, consumers would not know which mask to chose, or why an earlier approved mask was even being sold.  To suggest that it was the Plaintiffs employer who had to decide whether to use a 21A or a 21B approved mask is absurd.  How would an employer know the distinctions between the two?  What are the distinctions between the two, especially when the 21B approval is clearly based on more accurate testing?  These troubling discussions are only created because MSA's is forcing a very untenable regulatory interpretation that both 21A and 21B were simultaneously in effect.

6.      The only way MSA can logically argue that it was permissible to continue selling the 21A respirator, instead of an approved 21B respirator, is to argue that the 21B regulations did not supersede the 21A regulations.  MSA offers no evidence to support this conclusion.  It does not provide expert testimony on this point.  It only attaches a Bureau of Mines letter where mixed 21A and 21B Dustfoe components are approved under the new regulation - schedule 21B.  But these approvals are under 21B not 21A. 21A expired on January 19, 1965 when 21B was adopted. Accordingly, MSA's failure to obtain 21B approval, at least form January 19, 1965 to October 14, 1970 is negligence *per se*.

Respectfully submitted,
MALONEY★MARTIN, LLP

_/s/ Mike Martin_____
Mike Martin
Federal #5200604
TX #13094400
The Clocktower Building
3401 Allen Parkway, Suite 100
Houston, Texas  77019
Telephone:  (713) 759-1600
Facsimile:   (713) 759-6930
E-Mail: mmartin@maloneymartinllp.com


Zane Cagle
MO #53775, Fed. #499604
Metropolitan Square
211 North Broadway, Suite 2420
St. Louis, MO  63102
T:  (314) 241-1700
F:  (866)387-8590
E-Mail:  zane@pagecagle.com

**ATTORNEYS FOR PLAINTIFFS**


**CERTIFICATE OF SERVICE**

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing document has been provided to all counsel of record and/or attorneys-in-charge via Certified Mail, Return Receipt Requested, and/or via facsimile, and/or via hand delivery, and/or via U.S. Mail on this the __27th__ day of August, 2010.


/s/ Mike Martin_____
MIKE MARTIN